[No. A044296. First Dist., Div. One. Jan. 25, 1990.]

BURTON H. WOLFE, Plaintiff and Appellant, v.
CITY OF ALEXANDRIA et al., Defendants and Respondents.

[No. A041545. First Dist., Div. One. Jan. 25, 1990.]

BURTON H. WOLFE et al., Plaintiffs and Appellants, v.
CITY OF ALEXANDRIA et al., Defendants and Respondents.

542

## COUNSEL

Burton H. Wolfe, in pro. per., and Harry Tom Miller for Plaintiffs and Appellants.

Susan E. Russell, Sleizer & Giamalis, Nancy Sullivan Walter and Thomas D. Marple for Defendants and Respondents.

## OPINION

**STEIN, J.**—Burton H. Wolfe and his sister, Helen L. Wolfe, filed a complaint against (1) the City of Alexandria, Virginia, and Frances I. Langford, a community services specialist employed by the Division of Economic Opportunities, (2) the City of Alexandria's Department of Human Services and Jack Powers, the executive director of the Department of Human Services, and (3) the Jewish Council for the Aging of Greater Washington, Inc. (hereafter the Jewish Council), Sarah Gewirtz, a caseworker employed by the Jewish Council, and William H. Goldwater, Gewirtz's immediate supervisor. The complaint essentially alleged that the defendants, together and separately, had injured the Wolfes by causing Helen Wolfe, who apparently is elderly and unable to adequately care for herself, to be transported from Virginia to San Francisco and there "dumped" on Burton Wolfe who also was unable to care for her.

The various defendants moved to quash service of summons. The motions were granted and the Wolfes appeal. This appeal has been assigned the action number A041545.

Burton Wolfe filed another action against the same defendants. The superior court granted the defendants' motion to quash and denied Wolfe's motion for a new trial and to set aside the judgment. Wolfe appeals; the appeal has been assigned the action number A044296 and has been consolidated with number A041545.

### APPEAL NUMBER A041545

A preliminary consideration is the fact that the Wolfes' notice of appeal specified that the appeal was being taken from the court's minute order of

February 18, 1988, rather than from its formal order of February 26, 1988. We shall treat the notice of appeal as having been taken from the formal order. (See Cal. Rules of Court, rule 1(a) and *Helfer* v. *Hubert* (1962) 208 Cal.App.2d 22, 25 [24 Cal.Rptr. 900].)

Code of Civil Procedure section 410.10 provides, "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." ■ "This section manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations." (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

These considerations are set forth in *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57]: "A defendant not literally 'present' in the forum state may not be required to defend itself in that state's tribunals unless the 'quality and nature of the defendant's activity' in relation to the particular cause of action makes it fair to do so. [Citations.] Such a defendant's activity must consist of 'an act done or transaction consummated in the forum State' or 'some [other] act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' [Citations.] . . . [¶] Once it is established that the defendant has engaged in activity of the requisite quality and nature in the forum state and that the cause of action is sufficiently connected with this activity, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend itself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction. [Citations.] In other words, once the threshold of sufficient activity by the defendant has been passed, the question of the propriety of subjecting the defendant to the jurisdiction of the forum involves both a consideration of fairness to the plaintiff [citation] and a determination of whether, from a standpoint of the logical and orderly distribution of interstate litigation, the forum state is what Professor Ehrenzweig has termed a 'forum conveniens.' [Citations.]"

Accordingly, there is a two-part test. A defendant will not be held amenable to process unless the defendant has the type and sufficiency of contacts with the state such that the exercise of jurisdiction by the courts of that state over the defendant satisfies notions of fairness. If, but only if, the defendant's contacts are deemed sufficient, will it become necessary to determine if the interests of the parties and the forum state make the local court a sufficiently "conveniens" forum for purposes of litigating the action.

As we find that the Wolfes did not pass the threshold test, we need not and will not consider issues of convenience of forum.

■ It is well settled that the plaintiff bears the burden of proof to establish the facts of jurisdiction. (*Evangelize China Fellowship, Inc.* v. *Evangelize China Fellowship* (1983) 146 Cal.App.3d 440, 444 [194 Cal.Rptr. 240]; *Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 994-995 [107 Cal.Rptr. 744].) The trial court in ruling on the motion considers evidence relevant to that issue which may be set forth in declarations, treating, as here, a verified complaint as a declaration. (*Magnecomp Corp.* v. *Athene Co.* (1989) 209 Cal.App.3d 526, 533 [257 Cal.Rptr. 278]; *Evangelize China Fellowship, Inc.* v. *Evangelize China Fellowship, supra*, at p. 444.) On appeal, any conflicts in the evidence must be resolved against the appellant and in support of the order. (*Magnecomp Corp.* v. *Athene Co., supra*, at p. 533; *Kroopf* v. *Guffey* (1986) 183 Cal.App.3d 1351, 1359 [228 Cal.Rptr. 807]; *Evangelize China Fellowship, Inc.* v. *Evangelize China Fellowship, supra*, at p. 444.)

### A. The Contacts With California of the Jewish Council, Sarah Gewirtz and William Goldwater

None of the defendants at issue is present in California. The Jewish Council is a private, nonprofit corporation registered in Maryland and does business in Maryland, Virginia, and Washington, D.C. Gewirtz resides and works in Maryland. Goldwater resides and works in Maryland. Neither Gewirtz nor Goldwater owns property within California. Thus, other than the specific acts complained of by the Wolfes, no defendant resides in or has any contacts with California.

The Jewish Council owns and operates Seminary Towers, a community-living project in Alexandria, Virginia. Helen Wolfe began residing there in 1986, and Gewirtz at that time became her caseworker and adviser. On or about November 15, 1986, Gewirtz telephoned Burton Wolfe, apparently to ask if his sister might be sent to him. Burton Wolfe alleged that he told Gewirtz that he could not care for Helen. On December 10, 1986, Gewirtz wrote to Burton Wolfe, informing him that his sister had moved out of the Jewish Council's program and that in the future Frances Langford of the Department of Human Services would be working with her. Burton Wolfe later received a letter from Goldwater which apparently stated that Gewirtz's actions were sanctioned by the Jewish Council.[1]

---

[1]No copy of such a letter appears in the record on appeal and none appears to have been filed with the superior court. We accept the allegations of the complaint as true insofar as they state that such a letter was sent. We disregard the characterization of the letter as "approving of Gewirtz' conspiratorial acts."

### B. *The Contacts With California of the City of Alexandria, the Department of Human Services, Langford and Powers*

Again, we accept that no defendant resides or does business in California. The Wolfes, who bear the burden of proof, have not established otherwise.

Helen Wolfe was in contact with Langford before she moved out of the Jewish Council's housing. When she left that housing, she told Langford that she and her brother Burton Wolfe had decided that she should move to San Francisco. The Department of Human Services then provided her with 10 days' temporary housing while she prepared to leave. Langford during that period of time helped her obtain an airplane ticket to San Francisco (using donated, private funds). Langford also drove Helen Wolfe to the airport. Powers thereafter wrote a letter to the Wolfes indicating that Langford's actions were approved by the Department of Health Services.[2]

The superior court found that there was nothing in the action of any defendant from which it might be determined that such a defendant purposefully availed itself of the privilege of conducting activities within the forum state. Resolving all issues of fact in favor of the trial court's order, we agree. All relevant activities were conducted outside of California. The actions were the transfer of Helen Wolfe from the Jewish Council facilities to temporary housing, and the actions of aiding her to make the trip to California. While the Wolfes allege that these actions were taken as part of a conspiracy to "dump" Helen on her brother, there is substantial evidence, believed by the trial court, that the actions were taken at Helen's request and that the request was in no way coerced.

It is true, as the Wolfes contend, that jurisdiction may be predicated on the fact that a defendant causes an "effect" in the state by an act or omission which occurs elsewhere. (*Sibley* v. *Superior Court, supra,* 16 Cal.3d at pp. 445-446.) It does not follow, however, that the fact that a defendant's actions in some way set into motion events which ultimately injured a California resident, will be enough to confer jurisdiction over that defendant on the California courts.

" 'Even though an act is done elsewhere, if it has effects within a state the state may have jurisdiction, unless the nature of the effects and the defendant's relationship to the state make its exercise unreasonable. [See] *McGee* v. *International Life Ins. Co.* (1958) 355 U.S. 220 . . . (See also Judicial Council 1969 Report, p. 79 . . . )' (2 Witkin, Cal. Procedure (3d

---

[2] Again the record contains no copy of this letter and again we accept the allegations of the complaint that it was sent.

ed. 1985) § 109, p. 477.) In *Quattrone v. Superior Court* (1975) 44 Cal.App.3d 296, 306 [118 Cal.Rptr. 548], the court discusses this basis of jurisdiction and states: 'From *McGee* and *Hanson* [v. *Denckla* (1958) 357 U.S. 235 (2 L.Ed.2d 1283, 785 S.Ct 1228)] we conclude that it is reasonable to exercise jurisdiction on the basis of the defendant intentionally causing "effects in the state by an omission or act done elsewhere" whenever (a) the acts are of a nature "that the State treats as exceptional and subjects to special regulation," or (b) the defendant has, in connection with his causing such effects in the forum state, invoked "the benefits and protections of its laws." ' Merely causing an effect in California is not in and of itself sufficient to invoke jurisdiction." (*Farris v. Capt. J. B. Fronapfel Co.* (1986) 182 Cal.App.3d 982, 988-989 [227 Cal.Rptr. 619]; and see also *Schlussel* v. *Schlussel* (1983) 141 Cal.App.3d 194, 197 [190 Cal.Rptr. 95, 37 A.L.R.4th 846].)

Thus, advice given by out-of-state attorneys to the ex-wife of a California resident did not permit California courts to exercise jurisdiction over the attorneys, notwithstanding that the advice allegedly enabled the ex-wife to remove the couple's children from California and to block their return. (*Demarest v. Superior Court* (1980) 103 Cal.App.3d 791, 797-798 [165 Cal.Rptr. 641].) Similarly, a survey of a yacht done by a Florida company in connection with its purchase by a California resident was not sufficient contact with California for the exercise of personal jurisdiction even though the company knew that the yacht would be taken to California and even though the survey allegedly was false and thus had the "effect" of causing the California resident in California to expend a large amount of money in repairing the yacht and to lose profits through his inability to resell it. (*Farris v. Capt. J. B. Fronapfel Co., supra,* 182 Cal.App.3d at p. 990.) And in *Schlussel v. Schlussel, supra,* 141 Cal.App.3d 194, the act of an out-of-state defendant in making obscene and threatening telephone calls to California plaintiffs was held to justify the exercise of jurisdiction by the California court not simply because the defendant allegedly had intentionally injured the plaintiffs, but because the act at issue was "exceptional" and subject to special regulation; i.e., Penal Code section 653m. (*Id.* at pp. 197-198.)

█ Here, while the "effect" of physical and psychological trauma claimed by the Wolfes occurred in California, the acts or omissions which allegedly led to that effect were nothing more than providing Helen with temporary housing, obtaining an airplane ticket for her and driving her to the airport without ensuring the truth of her claims that Burton Wolfe had agreed to take care of her. Even if these acts and omissions were wrongful, and even if they were done "fraudulently," they simply were not such as

would permit a California court to exercise jurisdiction over nonresident defendants.

Any argument to the contrary has been put to rest by the United States Supreme Court in *Kulko v. California Superior Court* (1978) 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690]. There, an out-of-state father agreed with his teenage daughter to send her to live, rather than simply to vacation, with her mother in California. In order to facilitate this agreement, the father bought the daughter a one-way ticket to California. In seeking, among other things, increased child support, the mother argued that the father's actions were sufficient to confer jurisdiction over him by the California courts. The California Supreme Court agreed, finding that the father had invoked the benefits and protections of California law by sending his minor child to live in California. (*Kulko v. Superior Court* (1977) 19 Cal.3d 514, 522.) The United States Supreme Court, however, disagreed, finding both that such benefits and protections as were invoked were invoked on behalf of the minor child rather than sought by the father (*Kulko v. California Superior Court, supra,* 436 U.S. at p. 94 [56 L.Ed.2d at p. 142]), and that it could not be said that he derived economic benefit from his actions. "Any diminution in [the father's] household costs resulted, not from the child's presence in California, but rather from her absence from appellant's home." (*Id.* at p. 95 [56 L.Ed.2d at p. 143].) The same rationale applies in the instant case.

We therefore conclude that the trial court correctly ruled that the Wolfes did not sustain their burden of showing that the various defendants had sufficient contact with this state as to permit its courts to exercise jurisdiction over them.

We further find the Wolfes' contention that the defendants made a general appearance in the San Francisco Superior Court, thus consenting to that court's exercise of in personam jurisdiction, to be without merit. This contention is based on the claim that in disputing the facts alleged in the Wolfes' complaint, the defendants contested the "subject matter jurisdiction" of the court and thus exceeded the permissible scope of the motion to quash.  ■  It has been held that a defendant who argues issues of subject matter jurisdiction makes a general appearance. (*Raps v. Raps* (1942) 20 Cal.2d 382, 384 [125 P.2d 826].) Subject matter jurisdiction, however, is the power of the court to hear the cause. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) We see nothing in the record by which any defendant argued that the superior court was an improper forum for the action other than the argument that the California court lacked personal jurisdiction over the defendants; as noted, Wolfe's argument is predicated on the fact that the defendants disputed the facts alleged in his complaint. Moreover, even had such an argument been made,

we would find that the superior court correctly determined that the true issue was that of personal jurisdiction and simply, and properly, ignored any irrelevant material. (*Hernandez* v. *National Dairy Products* (1945) 126 Cal.App.2d 490, 494 [272 P.2d 799].)

The order quashing service is affirmed.

## APPEAL NUMBER A044296[3]

Here again, the superior court granted the defendants' motion to quash. The motion was made and opposed on the same grounds as those discussed in connection with the appeal in number A041545, and for the same reasons we affirm the order in the instant action.

We find nothing in Wolfe's "Motion for New Trial and for Order Setting Aside Judgment and Substituting Different Judgment" which would permit a ruling by the superior court favorable to him. By it, Wolfe attacked the factual and legal basis for the court's ruling on the motion to quash. We have found that the record and the law amply support the court's ruling. ■ The motion otherwise was brought on Wolfe's allegation that the ruling was procured by extrinsic fraud. No facts of extrinsic fraud, however, were alleged or shown; Wolfe did no more than again argue that the various acts of the defendants alleged in his complaint were "fraudulent."

The orders quashing service and denying Wolfe's motion for new trial are affirmed.

Racanelli, P. J., and Newsom, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 18, 1990.

---

[3] Wolfe's complaint also named as defendants the California Department of Health Services and its director, Kenneth Kizer, apparently on the grounds that the local defendants should have initiated their own actions against the out-of-state defendants. As the order at issue here is the order of the superior court quashing service on the nonresident defendants, any allegations or arguments in Wolfe's complaint which relate to the California defendants are superfluous. We therefore grant the motion of these defendants to strike all portions of the brief which pertain to the merits of the underlying action; such portions are irrelevant to any issue on appeal.