[No. D020481. Fourth Dist., Div. One. Apr. 18, 1994.]

JOHN S. EDMUNDS et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
LEN RONSON et al., Real Parties in Interest.

## COUNSEL

Kinkle, Rodiger & Spriggs and Charles S. Haughey., Jr., for Petitioners.

No appearance for Respondent.

McInnis, Fitzgerald, Rees & Sharkey, Thomas E. Sharkey, Donald A. Vaughn and Kevin M. Arnold for Real Parties in Interest.

## OPINION

**HUFFMAN, Acting P. J.**—Petitioners John S. Edmunds, attorney at law, a Hawaii law corporation; his Hawaii law partnership, Edmunds, Verga, Van Etten & O'Brien; and Edmunds as an individual (collectively, Edmunds) bring this petition for writ of mandate to require the superior court to vacate its order denying Edmunds's motion to quash service of summons and complaint, and enter a new order granting the motion. Edmunds has been sued by Len Ronson, an individual, and his fellow limited partners (collectively, Ronson) in a now-dissolved California limited partnership known as Manchester Hawaii Properties, Ltd. (MHP), on theories of professional negligence, breach of fiduciary duty, fraud, interference with prospective economic advantage and/or contractual relations, and conspiracy, arising out of legal representation Edmunds provided to MHP in Hawaii litigation. Edmunds's motion to quash was based on the argument that he, as a Hawaii attorney not admitted to practice in California, had represented the partnership before the state courts of Hawaii concerning rights to real estate located in the State of Hawaii, such that sufficient minimum contacts do not exist between Edmunds and the State of California and his conduct, even if causing an effect within California, does not represent the kind of purposeful availment of the benefits and protections of California law such that the assertion of California jurisdiction would be reasonable. The trial court disagreed, finding that Edmunds had caused an effect in California through acts or omissions which occurred elsewhere because the evidence suggested that Edmunds knew of possible breaches of fiduciary duty toward Ronson on the part of the general partner of MHP, Douglas Manchester and his company, Torrey Enterprises, Inc. (TEI) (collectively, Manchester). The trial

court also found that it was not unduly inconvenient for Edmunds to defend this action in California, when all the relevant factors were considered.

Finding substantial evidence does not support the trial court's order, we grant the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

Edmunds is the second set of attorney defendants Ronson has sued for legal malpractice and other theories based upon the MHP transactions. In companion writ proceedings concerning the first set of attorney defendants, Sheppard, Mullin, Richter & Hampton and its individual partner, Christopher B. Neils (collectively Sheppard Mullin), we recently outlined the factual background of the Hawaii litigation in which Edmunds was defense counsel for MHP. (*Ronson* v. *Superior Court** (Cal.App.).)[1] For purposes of this opinion, we summarize only the background facts of Edmunds's involvement in the transactions, which gave rise to this action for legal malpractice and related theories.

MHP was sued in Hawaii state court on June 20, 1989, by AMFAC Corporation (AMFAC), its subtenant on MHP's leased real property, on an alleged oral agreement to purchase MHP's leasehold interest in the property. Previously, MHP's general partner, Manchester, had been negotiating with the lessor of the property, the Estate of James Campbell, for the partnership to buy the real property underlying MHP's long-term lease. Ronson alleges that Manchester wrote a letter of June 8, 1989, offering to buy out the limited partners' interests in the partnership, in which he failed to disclose certain material facts about the transaction, including that a purchase agreement had already been made, which was quite attractive in terms of price and rent obligations. Around the time AMFAC filed suit, the California attorneys representing Manchester (Sheppard Mullin) briefly represented MHP as well, first in attempting to hold off the AMFAC litigation and then in assisting Manchester in finding Hawaii counsel to handle the Hawaii litigation. Edmunds reviewed the file June 16, 1989, and a retainer agreement June 21, 1989, and began representing MHP in the AMFAC action.

On July 21, 1989, Edmunds traveled to California to represent Manchester in his deposition in the AMFAC matter. In connection with taking the deposition, AMFAC's attorney accused Manchester of breaching fiduciary duties owed to Ronson. In his deposition, Edmunds states that issues were discussed at the Manchester deposition about whether the AMFAC offer was

---

*Reporter's Note: Opinion (D020090) deleted on direction of the Supreme Court by order dated July 14, 1994.

[1]Ronson has requested this court to take judicial notice of certain lodged exhibits in *Ronson* v. *Superior Court, supra,* and we have done so. (Evid. Code, § 459.)

adequately disclosed to Ronson and whether Ronson was told it was the partnership which had the sole opportunity to buy the property. Edmunds also discussed generally with Manchester at that time the duties owed by the general partner and the partnership, as well as the partnership's attorneys, to make full disclosure of material facts to the limited partners concerning the transaction and the proposed buyout or the buyout that had taken place as to some of the limited partners' interests. Edmunds and Manchester also generally discussed the various alternative courses of action available under the partnership agreement, such as dissolving the partnership or buying out the limited partners if their consent could not be obtained to one of the versions of the transaction as then proposed (i.e., selling the leasehold). Although Edmunds testified that he, as litigation counsel, believed the general partner was represented by California counsel, Sheppard Mullin, as to the transactional or business matters, including the disclosure issue, Edmunds reviewed one or more of the letters to the limited partners that had either gone out or was being proposed to be sent out, and made a couple of comments. However, Edmunds testified that he explained to the general partner that he could not give him legal advice about the disclosure matters, in light of the fiduciary duty owed by the general partner and Edmunds as the partnership's attorney to the limited partners. Edmunds's view was that he was brought into the matter only for the Hawaii litigation, not for the purposes of evaluating the business.

By July 24, 1989, Edmunds had returned to Hawaii and participated on that date in a six-way trans-Pacific telephone conference with Manchester and associates and the California attorneys, in which further disclosure of material facts to the limited partners was discussed. Pursuant to that discussion, Sheppard Mullin partner Neils prepared a draft second disclosure letter and release, which was sent to Manchester and a copy transmitted to Edmunds July 26, 1989, for his review. As requested, Edmunds reviewed the documents, made a correction, and communicated with Manchester about the letter. Manchester personnel also sent him another draft of the letter July 27, 1989, with a request for review and comment. Edmunds's correction to the first letter consisted of adding the word "not" to one sentence and, as to the second letter, suggesting two additions (that it was always intended that the AMFAC offer be matched, and that the consent of the limited partners be obtained to any additional capital call).

In September 1989 AMFAC's counsel was again alleging that Manchester had breached fiduciary duties by depriving the limited partners of participation in the property transaction. Edmunds received a final draft of the July letters in September 1989, but did not lay the letters side by side to make his own judgment as to whether the disclosure made to the limited partners was

adequate. Upon his deposition in this matter, March 11, 1992, Edmunds made such a comparison and gave his opinion that the correspondence was inadequate.

Back in November 1989, Edmunds performed further legal services for the partnership and the general partner by assisting them in listing the property for sale, registering as agent for service of process for the business, and assisting in the sale of the property. MHP obtained title to the property in August 1990, although all the limited partners except Mr. Ronson had by that time assigned their interests in the partnership to the general partner. Mr. Ronson brought an action to procure partnership records in 1991, and eventually, in August 1991, Manchester filed forms with the California Secretary of State to dissolve the MHP as of August 1991.

Ronson filed suit against Manchester, Sheppard Mullin, and related parties on a number of theories, including breach of fiduciary duty, fraud, legal malpractice, interference with prospective economic advantage, and conspiracy. (Ronson v. Manchester (Super. Ct. San Diego County, 1992, No. 651123.) The subject action was filed against Edmunds shortly thereafter, also alleging breach of fiduciary duty, fraud, interference with prospective economic advantage and/or contractual relations, professional negligence, and conspiracy. Shortly after being served with the complaint, Edmunds brought his first motion to quash service of summons and complaint, which was denied on the grounds that Edmunds had waived the right to object to jurisdiction by seeking removal to federal court and by seeking affirmative relief in state court in the nature of a motion to compel arbitration. Edmunds brought a writ to challenge the ruling and this court granted the writ, directing that a hearing be held on the merits of the motion to quash because there was no waiver of the right to object to jurisdiction. (*Edmunds* v. *Superior Court* (June 2, 1993) D018845 [nonpub. opn.].) After the remittitur issued, discovery was conducted and a renewed hearing on the motion to quash was set. Ronson renewed his motion to consolidate the Edmunds case with the case against Sheppard Mullin and Manchester, and Edmunds submitted opposition to the motion, prefaced by a statement that the opposition to the consolidation was made "by way of special appearance, and without waiving their objections to this court's purported exercise of jurisdiction herein, and subject to the pending Motion to Quash."[2]

After receiving supplemental briefing and hearing oral argument, the superior court denied Edmunds's motion to quash on the basis that Edmunds

---

[2]Although Ronson argues that Edmunds opposed the motion to consolidate on the merits and thereby waived any objections to jurisdiction, the introduction to the Edmunds papers clearly reveals that an adequate effort was made to preserve the objections to jurisdiction while submitting opposition to the consolidation motion, which was scheduled to be heard before the motion to quash. It does not appear from the record that Ronson claimed any such

had caused an effect in California by acts or omissions which occurred elsewhere, on the theory that Edmunds knew of possible breaches of fiduciary duty on the part of Manchester, and was aware of a possible conflict of interest, yet proceeded to comment on letters to the limited partners as part of the general partner's disclosure efforts. The ruling denying the motion is limited to the causing of an effect theory, and evidently found in favor of Edmunds on the alternative theories presented, i.e., extensive contacts with California and commission of tortious acts while physically present in California. The court further found no undue inconvenience on the part of Edmunds justified any finding that no jurisdiction existed. The court tentatively denied the motion to consolidate the two Ronson actions, although it was ultimately granted at a later time. (See pp. 224-225, *ante.*)

Edmunds petitioned this court for a writ of mandate to set aside the ruling denying the motion to quash. (Code Civ. Proc., § 418.10, subd. (c).)[3] We issued an order to show cause and stayed all proceedings as to Edmunds.

### DISCUSSION

### I

### *Introduction*

■ When jurisdiction is challenged by a nonresident defendant, the plaintiff bears the burden of proof to demonstrate that minimum contacts exist between the defendant and the forum state to justify imposition of personal jurisdiction. (*Mihlon* v. *Superior Court* (1985) 169 Cal.App.3d 703, 710 [215 Cal.Rptr. 442].) The plaintiff need not prove the truth of the allegations constituting the causes of action in order to justify an exercise of jurisdiction over nonresident parties, but the plaintiff must "present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable 'minimum contacts.' [Citation.]" (*Ibid.*) A trial court's resolution of conflicting evidence presented in support of or in opposition to the motion may not be reevaluated on appellate review. (*Ibid.*) Where the evidence of jurisdictional facts is not conflicting, ". . . the question of whether a defendant is subject to personal jurisdiction is one of law. [Citation.]" (*Pennsylvania Life & Health Ins. Guaranty Assn.* v. *Superior Court* (1994) 22 Cal.App.4th 477, 480 [27 Cal.Rptr.2d 507] [hereafter *Pennsylvania Life*].)

---

waiver of jurisdictional objections at the trial level. Edmunds has not waived his right to contest jurisdiction in this matter.

[3] All statutory references are to the Code of Civil Procedure unless otherwise specified.

As a threshold matter, we note that the trial court's ruling denying the motion to quash was based upon the theory that Edmunds had caused an effect in California by acts or omissions which occurred elsewhere. The court evidently did not find meritorious Ronson's arguments that jurisdiction was justified based upon Edmunds's "extensive contacts with California" or Edmunds's alleged "commission of tortious acts while physically present in California." Ronson has continued on appeal to pursue argument on those two grounds; however, substantial evidence supports the trial court's conclusion that they did not support an exercise of personal jurisdiction here.[4] We need not further discuss Ronson's extensive arguments that the trial court should have ruled otherwise on those grounds. Instead, we focus upon the theory of jurisdiction which the trial court found meritorious, i.e., the causing of an effect in this state by acts or omissions elsewhere.[5]

## II

### *Rules for Jurisdictional Analysis*

To evaluate whether the trial court correctly determined that personal jurisdiction over Edmunds was proper, we first outline the rules governing personal jurisdiction based on effects created in state by a defendant's out-of-state acts or omissions. A two-part test has been devised for the

---

[4]Ronson submitted extensive opposition to the motion to quash, consisting of copies of various pleadings filed by the defendants, an attorney declaration incorporating Edmunds's deposition excerpts and characterizing that deposition in certain argumentative ways, discovery responses by Edmunds, copies of the draft correspondence from the general partner to the limited partners concerning disclosure of information, and copies of relevant case law and professional rules of conduct from Hawaii. The trial court evidently found Ronson had not carried his burden of establishing by a preponderance of the evidence that jurisdiction was proper on the theories that California tortious conduct had occurred, or that there were otherwise sufficient minimum contacts with California. The evidence supports that conclusion.

[5]Section 410.10 provides that a California court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The Comment—Judicial Council, West's Annotated Code of Civil Procedure (1973 ed.) subdivision 9, pages 472-474—for section 410.10 states in pertinent part:

"A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable. [Citations.]

". . . . . . . . . . . . . . . . . . . . . . . . .

"There are three possible situations: (1) the act was done with the intention of causing effects in the state; (2) the act, although not done with the intention of causing effects in the state, could reasonably have been expected to do so; and (3) the act was not done with the intention of causing effects in the state and could not reasonably have been expected to do so. . . ."

overall jurisdiction determination: "A defendant will not be held amenable to process unless the defendant has the type and sufficiency of contacts with the state such that the exercise of jurisdiction by the courts of that state over the defendant satisfies notions of fairness. If, but only if, the defendant's contacts are deemed sufficient, will it become necessary to determine if the interests of the parties and the forum state make the local court a sufficiently 'conveniens' forum for purposes of litigating the action." (*Wolfe* v. *City of Alexandria* (1990) 217 Cal.App.3d 541, 545 [265 Cal.Rptr. 881].)

As explained by the Supreme Court in *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 446 [128 Cal.Rptr. 34, 546 P.2d 322], "[t]he mere causing of 'effect' in California, however, as acknowledged in the Judicial Council comment quoted above [section 410.10], is not necessarily sufficient to afford a constitutional basis for jurisdiction; notwithstanding this 'effect' the imposition of jurisdiction may be 'unreasonable.' As was held in *Internat. Shoe Co.* v. *Washington* [1945] 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], a suit may not be maintained where jurisdiction offends ' "traditional notions of fair play and substantial justice." ' [Citations.]" (*Sibley, supra,* 16 Cal.3d at p. 446.) ■ To determine whether imposition of jurisdiction is constitutionally "unreasonable," another two-part test has been created. First, there must be some act by which the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, and thus has invoked the benefits and protections of its laws. (*Id.* at p. 447.) In the alternative, the court may look to whether the state has passed special legislation relating to the subject matter of the action, which would support an assertion of jurisdiction over an out-of-state defendant. (*Schlussel* v. *Schlussel* (1983) 141 Cal.App.3d 194 [190 Cal.Rptr. 95, 37 A.L.R.4th 846].) ■ The parties do not argue that there is any special state regulation on the matters alleged by Ronson's complaint; therefore, our inquiry must focus on whether Edmunds has in some manner purposefully availed himself of the benefits and protections of California law, or sought economic benefit here. (*Sibley, supra,* 16 Cal.3d at p. 447.)

Case law has set forth a number of factors with which to evaluate the reasonableness of exercising jurisdiction over a nonresident defendant who has arguably caused an effect in the forum state. In *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 150 [127 Cal.Rptr. 352, 545 P.2d 264], the Supreme Court stated that the question of jurisdiction cannot be decided by the application of any precise formula. Where the defendant's activities in the forum are not pervasive enough to justify the exercise of general jurisdiction, limited jurisdiction based upon a particular cause of action "depends upon the quality and nature of his activity in the forum in relation to the particular

cause of action." (*Id.* at pp. 147-148.) "The question whether jurisdiction exists depends on the particular facts of each case and cannot be decided by applying a mechanical test or a precise formula. [Citations.]" (*Pennsylvania Life, supra*, 22 Cal.App.4th 477, 481.)

As set forth by the Judicial Council in its comment to section 410.10, jurisdiction over a nonresident defendant may not be asserted if the nature of the effects created and of the individual's relationship to the state make the exercise of jurisdiction unreasonable. (*Sibley* v. *Superior Court, supra*, 16 Cal.3d at p. 446.) ■ In *Wolfe* v. *City of Alexandria, supra*, 217 Cal.App.3d at page 547, the court explained that even where a defendant's actions in some way set into motion events which ultimately injured a California resident, that fact is not necessarily enough to confer jurisdiction over that defendant in California, where jurisdiction would be unreasonable. Similarly, in *Pennsylvania Life, supra*, 22 Cal.App.4th at page 483, this court commented that "[a]bsent some form of 'purposeful availment,' the fact a defendant's conduct in the forum state has some relationship to the causes of action asserted in the lawsuit, cannot, in and of itself, render jurisdiction reasonable."

Moreover, even where other parties involved in the action have considerable contacts with California, if the nonresident defendant did not evidently intend to conduct business in California or in any other way directly or indirectly gain from California dealings, the purpose of the other parties cannot be imputed to the nonresident defendant for the purpose of assuming personal jurisdiction over him. (*Sibley* v. *Superior Court, supra*, 16 Cal.3d at pp. 447-448.) Thus, ". . . jurisdiction over a nonresident must be based on an analysis of the relationship between *that* defendant and the forum state. [Citation.]" (*Pennsylvania Life, supra*, 22 Cal.App.4th at p. 487; see *Kaiser Aetna* v. *Deal* (1978) 86 Cal.App.3d 896, 901 [150 Cal.Rptr. 615].)

III

*Application of Rules*

We proceed to apply these rules to Edmunds's motion to quash in light of the nature of the allegations of Ronson's pleadings. In our opinion in the companion writ proceedings, *Ronson* v. *Superior Court, supra*, we outlined the limitations upon attorney-client duties owed to limited partners by an attorney for a limited partnership. In *Ronson*, this court issued a writ of mandate to set aside the trial court's grant of summary judgment in favor of

the attorneys because triable issues of fact remained as to whether, under those circumstances, there were attorney-client duties imposed by public policy on the partnership's attorney in favor of the limited partners. Edmunds is in the same position here as were the California attorneys in *Ronson* (Sheppard Mullin); both sets of attorneys represented the partnership. Thus, under *Kapelus v. State Bar* (1987) 44 Cal.3d 179 [242 Cal.Rptr. 196, 745 P.2d 917] and *Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717 [20 Cal.Rptr.2d 756], the totality of the circumstances of the attorneys' representation of the partnership must be considered to determine whether the limited partners may claim an attorney-client relationship with the partnership's attorney. Thus, in *Ronson*, triable issues remained as to the limited partners's causes of actions against Sheppard Mullin for professional negligence and breach of fiduciary duty, and a related conspiracy theory. We expressed doubt in that opinion as to whether an actual fraud cause of action could stand in light of the fact that Sheppard Mullin attorneys never made any direct representations to the limited partners; however, we expressed no opinion as to those causes of action for interference with prospective economic advantage and/or contractual relations. (*Ronson, supra.*)

We adopt the analysis set forth in *Ronson* of these causes of action, as separately alleged against Edmunds. Accordingly, we conduct our jurisdictional analysis of the type and sufficiency of minimum contacts between Edmunds and California by assuming that Ronson's causes of action for professional negligence and breach of fiduciary duty are viable, as are, potentially, the tortious interference and conspiracy causes of action. In effect, we will assume the worst as to Edmunds's activities in the AMFAC litigation insofar as they affected Ronson.

Even making such an assumption, we find it would not be reasonable for California to assume jurisdiction over Edmunds on these allegations, when all of the relevant criteria for defining reasonableness are considered. The crux of Ronson's allegations is that Edmunds breached fiduciary duties toward the limited partners and thus crossed "the line between defensive representation in an extraterritorial lawsuit and actionable, tortious conduct committed within the State of California . . . ." As we explained at the outset, substantial evidence does not support Ronson's claim that Edmunds engaged in tortious conduct while within the State of California at the time of Manchester's deposition in the AMFAC action. We look instead to whether Edmunds's acts reflect a substantial connection with California, or whether only an "attenuated connection" exists which would be insufficient to support the exercise of jurisdiction. (*Pennsylvania Life, supra*, 22

Cal.App.4th at p. 484.) Is there a substantial nexus between the causes of action alleged and Edmunds's activities which caused an effect in California? (See *Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 149.)

Initially, we note that even though Ronson has made allegations of civil conspiracy against Edmunds, for purposes of assuming personal jurisdiction, the purposes of other parties in the particular transaction cannot be imputed to the defendant seeking to quash service. (*Sibley* v. *Superior Court, supra,* 16 Cal.3d at pp. 447-448.) Instead, the inquiry should be whether the defendant intended to conduct business or in any other way gain directly or indirectly from dealings in this state. (*Ibid.*)[6] Stated another way, personal jurisdiction "depends upon the quality and nature of [the defendant's] activity in the forum in relation to the particular cause of action." (*Cornelison* v. *Chaney, supra,* 16 Cal.3d at p. 148.)

Here, Ronson argues that Edmunds's activities in commenting upon the proposed disclosure documents to be sent to the limited partners by the general partner, and his eventual assistance to the partnership in the sale of the property, constitute contacts with California residents (the limited partners) which justify the assertion of personal jurisdiction over Edmunds. Ronson claims that by representing California residents and communicating with them about the subject of the litigation, Edmunds purposefully availed himself of the benefits and protections of California law. (See *Brown* v. *Watson* (1989) 207 Cal.App.3d 1306, 1316 [255 Cal.Rptr. 507].) However, the evidence is otherwise, despite Ronson's efforts to characterize Edmunds's deposition testimony as showing purposeful availment of the benefits and protections of California law. In his deposition, Edmunds clearly showed that his understanding of his role was that his actions were confined to litigation activities in the Hawaii AMFAC case. He understood that the California attorneys, Sheppard Mullin, were handling the disclosure issue for the general partner vis-à-vis the limited partners. Sheppard Mullin was, in Edmunds's understanding, business counsel for the general partner and, accordingly, for the partnership. Edmunds was brought into the matter only for litigation purposes, not for evaluating the business itself.

Edmunds testified that he advised the general partner about the potential conflict of interest for himself as attorney for the partnership with respect to

---

[6]Edmunds points out that there is no showing in the record of any court order allowing a pleading against an attorney for civil conspiracy as required by Civil Code section 1714.10, subdivision (a). We need not further address this argument in light of our finding that the type and sufficiency of contacts here do not justify a finding that the exercise of jurisdiction would be reasonable.

his duties to ensure adequate disclosure to the limited partners. Edmunds stated that he would not have participated in the telephone conference discussing the disclosure matters except for his awareness that Sheppard Mullin was participating as business counsel. Edmunds thus understood that the general partner understood that Edmunds was not advising the general partner on handling disclosure matters. With those caveats made, Edmunds did go on to make some comments on the disclosure documents. Although the transmittal letter for the documents (copied to Edmunds) states that a general consensus was reached among the participants in the telephone call to keep the disclosure documents as brief as possible, Edmunds testified he does not remember any such consensus being reached. After the general partner sent out the July 26, 1989 disclosure letter to the limited partners, as drafted by Sheppard Mullin attorney Neils, Edmunds did not further participate in comparing the various versions of the documents or in deciding what material would be included and what would be deleted. Edmunds also testified that when he was brought into the litigation in mid-June 1989, he was never asked to go back and examine the details of the original buyout proposal sent to the limited partners. He testified that when he came into the action, all but one limited partner had already agreed to assign their interests and Edmunds had no reason to be suspicious of those agreements. As he was not a California partnership attorney, he stated he would not have made an examination into those matters even if asked to do so, as he lacked the necessary expertise or license to practice California law.

To assess this evidence, we should keep in mind that Edmunds is an attorney licensed to practice in the State of Hawaii, who came to California in the context of representing his California client, the partnership and the general partner, in deposition in a Hawaii action. The mere facts that to do so, he came to California, made phone calls and wrote letters to and from this state, and accepted payment from a California client, do not establish purposeful availment of the benefits and protections of California law. (*Sher* v. *Johnson* (9th Cir. 1990) 911 F.2d 1357, 1362-1363.) Ronson relies chiefly upon *Brown* v. *Watson, supra,* 207 Cal.App.3d 1306 for support for the assertion of personal jurisdiction here. In *Brown,* two bases of jurisdiction were found to exist over Texas attorneys who had associated with California attorneys to represent California clients, in a state court action in Texas, subject to a fee-splitting arrangement with the California attorneys. The Texas attorneys had failed to timely file summons and complaint, resulting in the dismissal of the Texas action. In reversing the trial court's order granting the motion of the Texas attorneys to quash service of summons in a *malpractice action, the Court of Appeal found that the Texas attorneys had* purposefully conducted business in California and, in addition, the Texas attorneys' acts or omissions elsewhere had caused an effect in California.

With respect to the purposeful conduct of business in California, the court relied on the many contacts by the Texas attorneys with the California attorneys, the presence of materials for the Texas action here in California, as furnished to the Texas attorneys, the fee-splitting arrangement, and extensive telephone and correspondence communications. With respect to the acts or omissions outside of California which caused an effect here, the Court of Appeal stated: "While respondents engaged in no activities within California, the tort of which they are accused arose out of their representation of California residents; only respondents' access to information located in California, and their contact with California residents, enabled them to undertake such representation. Accordingly, it is fair and reasonable to subject respondents to the jurisdiction of California courts." (*Brown* v. *Watson, supra,* 207 Cal.App.3d at p. 1316.)

We first note that *Brown* v. *Watson, supra,* 207 Cal.App.3d 1306 is distinguishable from this case because the exercise of jurisdiction over the Texas attorneys was based on an additional factor beyond causing an effect in California by out-of-state conduct, i.e., the purposeful conduct of business within California. We also note that the Texas attorneys directly communicated with their California clients, whereas in this case Ronson seeks to establish attorney-client duties as to Edmunds based solely on his status as attorney for the partnership and thus, impliedly, for the limited partners, a more problematic but not impossible scenario. (See *Ronson* v. *Superior Court, supra.*) Even assuming, as we do here, that Ronson has a viable claim for legal malpractice and breach of fiduciary duty against Edmunds, the jurisdictional inquiry still requires that assertion of jurisdiction be reasonable under all the circumstances.

Here, Edmunds's representation of the partnership was confined to litigation in one Hawaii action, and later extended, after that action was settled, to limited assistance in the sale of the real property, by registering as the partnership's agent for service of process. Edmunds did not author or cause to be sent the disclosure documents, and his comments upon them were de minimis in the context of the entire transaction. He testified that he repeatedly advised the partnership that he could not participate in planning the disclosure of material information to the limited partners because of his status as partnership counsel. We believe the facts of this case fit squarely within the jurisdictional analysis in *Wolfe* v. *City of Alexandria, supra,* 217 Cal.App.3d 541, where the court was presented with allegations that out-of-state social worker defendants had injured California plaintiffs by causing one of the elderly plaintiffs to be transported from another state to California and there "dumped" upon the other elderly plaintiff, who was allegedly

unable to care for her. (*Id.* at p. 544.) Although the court acknowledged that jurisdiction may be predicated upon the fact that a defendant causes an "effect" in the state by an act or omission which occurs elsewhere, the court went on to state: "It does not follow, however, that the fact that a defendant's actions in some way set into motion events which ultimately injured a California resident, will be enough to confer jurisdiction over that defendant on the California courts." (*Id.* at p. 547.) The court relied on the reasoning of *Kulko* v. *Superior Court* (1978) 436 U.S. 84, 94-95 [56 L.Ed.2d 132, 142-143, 98 S.Ct. 1690], where the United States Supreme Court found that a father who was a resident of New York who sent his minor daughter to live with her mother in California had not thereby invoked the benefits and protections of California on his own behalf, but rather on behalf of the minor child. It could not be said that he derived individual economic benefit from his actions. (*Ibid.*)

Similarly, in this case, by traveling to California to represent his client in deposition, and by carrying out representation of a California client in Hawaii litigation, Edmunds was essentially promoting the economic well-being of his Hawaii law partnership, along with the Hawaii interests of the partnership and its constituents, based on their interest in Hawaii real property. Any promotion of their California financial interests was incidental. Everything Edmunds did was done in his capacity as a Hawaii attorney, and he thus lacks the necessary close relationship to the State of California in these matters to justify the assertion of personal jurisdiction over him.

Substantial public policy concerns support our conclusion. Allowing an exercise of California jurisdiction over an out-of-state attorney who represents California clients in an out-of-state action, and who has had the limited degree of contact with California as has Edmunds, would effectively be to penalize out-of-state attorneys by subjecting them to suit here on a highly attenuated theory. (See *Spokane Eye Clinic, Inc.* v. *Superior Court* (1976) 63 Cal.App.3d 548, 554 [133 Cal.Rptr. 838].) Out-of-state attorneys would likely be discouraged from representing California residents in actions in the attorney's home state if malpractice and other actions could readily be pursued in California, based largely on the client's residence here. (*Ibid.*) In all, Ronson has simply failed to "present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to· constitute constitutionally cognizable 'minimum contacts.' [Citation.]" (*Mihlon* v. *Superior Court, supra,* 169 Cal.App.3d at p. 710.) Accordingly, this court need not engage in the further aspect of the jurisdictional test set forth in *Sibley* v. *Superior Court, supra,* 16 Cal.3d at page 448, i.e, "balancing the inconvenience of defending the action in this state against the interests of the

plaintiff in suing locally and of the state in assuming jurisdiction. [Citations.]"

DISPOSITION

Petition granted. Let a writ of mandate issue to require the superior court to vacate its order denying Edmunds's motion to quash and to enter a new and different order granting the motion and dismissing the action as to Edmunds.

Froehlich, J., and Nares, J., concurred.

A petition for a rehearing was denied May 12, 1994.