Filed 1/24/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KARI JENSEN,<br><br>    Cross-complainant and Appellant,<br><br>v.<br><br>TRINE JENSEN,<br><br>    Cross-defendant and Respondent. | 2d Civil No. B289611<br>(Super. Ct. No. 56-2017-00495927-CU-OR-VTA)<br>(Ventura County) |

Kari Jensen appeals the trial court's order quashing service of a summons and cross-complaint on her sister, Trine Jensen. Trine, a resident of Utah, is the guardian ad litem for their elderly mother, Grethe Jensen. Kari's cross-complaint attempted to allege a claim against Trine in her individual capacity and not in her capacity as Grethe's guardian ad litem. In late 2016, when Grethe was 89 years old, she sold a house she owned in a Ventura retirement community and bought another house with Kari as joint tenants. Trine traveled to California and moved Grethe to Utah, where she now lives in a "memory care" facility. After the move to Utah, Grethe filed a lawsuit in Ventura against Kari, for the partition by sale of the real property they own as joint

tenants and for damages on tort theories including financial elder abuse. The Ventura County Superior Court granted Trine's application to be appointed guardian ad litem for Grethe. Kari filed a cross-complaint against Trine for intentional interference with prospective economic advantage. Trine moved to quash service of the summons on the ground that California lacks personal jurisdiction over her. The trial court granted that motion. Kari appeals. We affirm.

*Facts and Procedural History*

Grethe's complaint alleges that Kari used undue influence to convince Grethe to sell her home in a gated retirement community and buy a different house in Ventura as a joint tenant with Kari. Kari told Grethe she would become homeless without Grethe's financial assistance and that she would take care of Grethe. Grethe sold her house and the two used the sales proceeds to purchase a new house. They financed a portion of the purchase price with a secured, thirty-year note which Grethe co-signed.

Grethe lived in the new house while it was being renovated. Her complaint alleges that she "was confined to a few rooms all day. Her life's possessions were shoved into the garage, and she lived in a construction zone inundated with noise and dust all day. Because the kitchen was torn up, [Grethe's] 'kitchen' consisted of a coffee maker on an end table outside her bedroom door."

Of course, the new living arrangement was not successful. In January 2017, Grethe walked away from the house and was found "wandering aimlessly down the street in her old . . . neighborhood in a rainstorm, holding a sack of clothing under one arm, and her dog under her other arm." Trine traveled to

California, packed up Grethe's belongings and moved her to Utah to live with Trine and her extended family.

Once Grethe was in Utah, she gave Trine power of attorney over her financial affairs and healthcare, designated Trine in her will as the personal representative of her estate and appointed Trine the trustee of her living trust. She also amended her living trust to omit Kari.

In late March 2017, about three months after she moved to Utah, Grethe recorded a declaration severing the joint tenancy. In May, she filed this lawsuit, to partition by sale the real property she had purchased with Kari. In late December 2017, Trine filed an application in the Ventura County Superior Court to be appointed Grethe's guardian ad litem. The application was granted.

Kari denies the allegations in Grethe's complaint. She alleges Grethe was never "confined" in the new house. Instead, the areas under renovation were blocked off for her safety. Kari also filed a cross-complaint against Trine in her individual capacity, alleging a cause of action for intentional interference with prospective economic advantage. The cross-complaint alleges Trine took advantage of Grethe's advancing dementia and fragile health to coerce her into severing the joint tenancy. Trine filed a motion to quash service of the summons and cross-complaint on the ground that California lacked personal jurisdiction over her as an individual. The trial court agreed and granted the motion.

*Contentions*

Kari contends the trial court erred when it found a lack of personal jurisdiction over Trine, because Trine purposefully availed herself of the protections and benefits of California law

3

when she applied, in a California court, to be appointed Grethe's guardian ad litem. Trine contends her only contacts with California relate to Grethe's protection and that, as an individual, she lacks the requisite minimum contacts with California to justify its exercise of jurisdiction over her.

*Discussion*

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction. [Citation.] Once facts showing minimum contacts with the forum state are established, however, it becomes the defendant's burden to demonstrate that the exercise of jurisdiction would be unreasonable. [Citation.] . . . When no conflict in the evidence exists . . . , the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*).)

"California courts may exercise personal jurisdiction on any basis consistent with the Constitutions of California and the United States. [Citation.] The exercise of jurisdiction over a nonresident defendant comports with these Constitutions 'if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate "'traditional notions of fair play and substantial justice.'"' [Citations.]" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).)

The parties agree Trine is not subject to the general jurisdiction of California because she does not have substantial, continuous and systematic contacts with the state. (*Perkins v. Benguet Consol. Mining Co.* (1952) 342 U.S. 437, 445-446.) To determine whether specific jurisdiction exists, we are required to

4

consider the "'relationship among the defendant, the forum, and the litigation' . . . . [Citation.]" (*Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414.) California may exercise specific jurisdiction over a nonresident defendant only if: (1) the defendant has purposefully availed himself or herself of forum benefits; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the forum's assertion of personal jurisdiction over the defendant "'would comport with "fair play and substantial justice."'" [Citation.]" (*Vons*, *supra*, 14 Cal.4th at pp. 446-447.)

A defendant "personally avails" himself or herself of benefits in the forum state "'when the defendant purposefully and voluntarily directs his [or her] activities toward the forum so that he [or she] should expect, by virtue of the benefit he [or she] receives, to be subject to the court's jurisdiction based on' his [or her] contacts with the forum. [Citation.]" (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.)

*Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221 (*Edmunds*), is instructive. There, limited partners of a California limited partnership sued Edmunds, one of the partnership's lawyers, for malpractice in California state court. Edmunds resided and practiced law in Hawaii. He represented the partnership in litigation, pending in Hawaii, relating to the partnership's interest in Hawaiian real property. Edmunds' contacts with California were limited to representing the California-based partnership, appearing with the general partner at a deposition in California, discussing the litigation with the partnership's California-based counsel and reviewing documents drafted by California counsel. (*Id.* at p. 234.)

The court of appeal concluded California could not exercise personal jurisdiction over Edmunds. "The mere facts that to [represent his clients in the Hawaii litigation], he came to California, made phone calls and wrote letters to and from this state, and accepted payment from a California client, do not establish purposeful availment of the benefits and protections of California law." (*Edmunds, supra*, 24 Cal.App.4th at p. 234.) All of Edmunds' contacts with California occurred in his capacity as a Hawaiian lawyer, representing his client in litigation pending in Hawaii, relating to Hawaii real property. "Everything Edmunds did was done in his capacity as a Hawaii attorney, and he thus lacks the necessary close relationship to the State of California in these matters to justify the assertion of personal jurisdiction over him." (*Id.* at p. 236.)

Trine, in her individual capacity, has similarly insubstantial contacts with California. The actions she has taken in California all relate to her representation of Grethe, not to the protection of her personal interests. Before the litigation began, Trine traveled to California to help Grethe moved to Utah. Kari's cross-complaint does not allege that this conduct was tortious. After Grethe arrived in Utah, she decided to terminate the joint tenancy with Kari and to omit Kari from her living trust. Trine assisted Grethe in making those changes, which Kari alleges amounted to a tort. All of that conduct, however, occurred in Utah.

Neither Grethe nor Trine "voluntarily" chose California as the forum for Grethe's lawsuit against Kari. Grethe was required to file her complaint in California because the real property at issue is located here. Trine filed her guardian ad litem application in California because the litigation was pending here

6

and this is the forum in which Grethe requires assistance. After she was named Grethe's guardian, Trine's only contacts with California have been related to the litigation and undertaken in her representative capacity: she has verified discovery responses on Grethe's behalf and otherwise assisted with the litigation.

In our view, Trine did not "purposefully and voluntarily" direct activities toward California. Like the attorney at issue in *Edmunds,* her contacts with California were directed toward protecting the best interests of her "client," Grethe, in the litigation. They "do not establish purposeful availment of the benefits and protections of California law." (*Edmunds*, *supra*, 24 Cal.App.4th at p. 234.)

Because Trine did not personally avail herself of California's benefits, we conclude the state may not exercise personal jurisdiction over her. (See, e.g., *Kulko v. Superior Court* (1978) 436 U.S. 84, 94.) The trial court correctly granted her motion to quash service of the cross-complaint.

*Conclusion*

The order granting respondent Trine Jensen's motion to quash service of summons and cross-complaint is affirmed. Respondent shall recover her costs on appeal.

CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:

GILBERT, P. J.                    TANGEMAN, J.

7

Vincent O'Neill, Judge

Superior Court County of Ventura

_____

Law Offices of Martin E. Stearn and Martin E. Stearn for Cross-complainant and Appellant.

Myers, Widders, Gibson, Jones & Feingold and Erik B. Feingold, James E. Perero and Rabiah Rahman, for Cross-defendant and Respondent.