Filed 2/24/22  Wiener v. Perez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| STEVEN DONALD WIENER, | D078297 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2019-00006513-CU-FR-CTL) |
| RAPHAEL GAMA PEREZ, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

Downey Brand, Jay-Allen Eisen; Zuccaro Law Firm, Emil A. Zuccaro; Law Offices of Cathy E. Crosson, Cathy E. Crosson; Law Offices of Clyde DeWitt and Clyde F. DeWitt for Plaintiff and Appellant.

Law Offices of Philip H. Dyson and Philip H. Dyson for Defendants and Respondents.

# INTRODUCTION

Steven Donald Wiener (Steve[1]) appeals from an order quashing service of summons on the named non-California defendants in his lawsuit for lack of personal jurisdiction.  In his lawsuit, Steve alleged he formed a partnership with his father, Donald Joseph Wiener Coss (Donald), in the 1980s to purchase land in Mexico, where his father lived.  Steve alleged Christine Louise Wiener (Christine), Donald's daughter from another marriage, and Raphael Gama Perez (Gama), Donald's lawyer in Mexico, conspired with Donald to defraud him of his interest in the Mexico real estate investments.  At the time of the alleged fraud, Steve claimed Donald was living in California.

Steve, a California resident, sued Gama, Christine in her individual capacity and as executor for the Estate of Donald Joseph Wiener Coss (the Estate), and the Estate itself (collectively, Respondents).  Because Gama and Christine are legal residents of Mexico and are not physically located in the United States, Steve served them with the summons and complaint in Mexico, in accordance with the Hague Convention.

Respondents moved to quash the service of summons for lack of personal jurisdiction.  They asserted that Gama and Christine are, and were at all relevant times, legal residents of Mexico; the land at issue is in Mexico; Donald's will, which Steve seeks to invalidate, was executed in Mexico; and the totality of the Estate is in Mexico.  Respondents asserted they have not had sufficient minimum contacts with California, such that exercise of jurisdiction would not comport with due process under the state and federal

---

[1]     As the parties have, we refer to members of the Wiener family by their first names to avoid any confusion.

constitutions. The trial court granted the motion. We agree with the trial court's conclusion that California does not have personal jurisdiction over any of the Respondents. We, therefore, affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*The Underlying Complaint*

The following summary of allegations is taken from the underlying unverified complaint.[2]

Donald was a successful entrepreneur in the adult entertainment industry with a business headquartered in San Diego. In the 1970s, Donald moved from San Diego and relocated his " 'official' " residence to Tijuana, Mexico and began commuting to San Diego for work. In 1987, Steve, a California resident, formed a partnership with his father, who was living in Mexico, for the purpose of buying, developing, and owning real estate in Mexico.

Steve and Donald purchased five parcels of land in Chapala, Jalisco, Mexico, each contributing equally, and held the land in "a real estate

---

[2] "Allegations in an unverified complaint are insufficient to satisfy" an appellant's burden of demonstrating facts justifying the exercise of California jurisdiction. (*In re Automobile Antitrust Cases* I & II (2005) 135 Cal.App.4th 100, 110 (*Automobile Antitrust Cases*).) Instead, the appellant must provide affidavits and other authenticated documents in order to demonstrate competent evidence of jurisdictional facts. (*Ibid.*) Moreover, although the appellant is not required to prove the merits of his claims in order to establish jurisdiction, where he alleges facts relevant to jurisdiction, we do not accept an allegation as true where there is evidence to the contrary. "[A]ny conflicts in the evidence must be resolved against the appellant and in support of the order" granting a motion to quash service of summons for lack of personal jurisdiction. (*Wolfe v. City of Alexandria* (1990) 217 Cal.App.3d 541, 546 (*Wolfe*).)

investment ownership structure known in Mexico as 'Fideicomisos.'" It is alleged that these are similar to trusts under California law. Steve and Donald held the land in three separate Fideicomisos established in 1987, 1994, and 1996, respectively (collectively, the Mexico trusts). They were joint owners or co-beneficiaries to the Mexico trusts until at least March 2017.

Donald's health began to decline in 2012, and he was "housebound for the last [six] years of his life" in a home in Bonita, San Diego County, until he died in May 2018.[3] Donald "rarely left the Bonita home" and was dependent on live-in caregivers.

Christine is Steve's half-sister and Donald's daughter from a previous marriage. She travelled from Mexico to visit Donald in the Bonita home "infrequently" from 2002 to 2016, and "more frequently" after Donald broke his hip in 2016. She often stayed at the Bonita home for weeks at a time between 2016 and 2018. Steve believed Christine "isolated" and "unduly influenced Donald about his feelings for Steve" during those visits, including telling Donald that "Steve was a thief, trying to steal Donald's wealth from him."

Gama is "a Mexican lawyer licensed to practice in Baja California, Mexico." Steve first met Gama in the 1980s when Gama was handling Donald's divorce from Christine's mother in Mexico. Donald subsequently told Steve that Gama was "their Mexican attorney" handling "their legal matters in Mexico," including managing the Mexico trusts. Steve alleged he signed many documents related to the Mexico trusts that Gama prepared over the years. He often met with Donald and Gama at Steve's San Diego

---

3    In his declaration in opposition to the motion to quash, Steve averred that he purchased the Bonita home in 2002 for Donald "to take up residence" due to his declining health.

4

office, and once at the Bonita home after Donald became housebound. Based on Donald's statements and Gama's conduct, Steve believed Gama was also his lawyer.

Steve alleged that, sometime around late 2016 or early 2017, "Donald, Gama, and Christine entered into an unlawful agreement to interfere with and destroy" his property interests in the Mexico trusts. By March 2017, Christine had "poisoned Donald's feelings toward Steve." Donald, Christine, and Gama came up with "[t]he [b]ig [l]ie" to have Steve "unwittingly assign his rights" in the Mexico trusts to Donald, so Donald could then leave these assets to Christine. They "fabricated a story to tell Steve," that: Donald wanted to remove the properties from the Mexico trusts because he was tired of paying for the administrative costs of the trusts. They could instead hold title directly in their joint names and Steve would get 100 percent ownership of the properties when Donald died. To do all of this, Steve had to give Donald power of attorney so Donald could sign the papers to make the necessary changes in Mexico.

Donald told Steve "[t]he [b]ig [l]ie" in March 2017 and, in furtherance of this "[c]onspiracy," Gama prepared and sent Steve a power of attorney document (POA), which Steve executed in San Diego in March 2017. In June 2017, Steve executed a second POA prepared and sent by Gama, because the first was allegedly "legally inadequate/insufficient to accomplish the [Respondents'] [c]onspiracy." According to Steve, Gama falsely represented to him that the second POA "was required to avoid payment of taxes and other 'exactions.'" Both POAs, attached as exhibits to the underlying complaint, directly recite provisions of Mexican law and state that Steve grants Donald power of attorney to transfer property rights under "the Jalisco Civil Code." The POAs further state that Steve grants Donald the power to execute "all

and every procedure . . . including the cancellation, total or partial of [the]Trust Agreements."

Around the same time, in April 2017, Christine drove Donald to Gama's office in Tijuana, Mexico, where Donald wrote and executed a holographic will that stated, in relevant part:

> "I Donald Joseph Wiener . . . Divorced and a legal resident of Mexico where I have my domicile in . . . Tijuana, Baja California being of sound mind and acting of my free volition under no duress and or under any other influence desire to make my last will and testemant (sic) [¶] . . . [¶] I Herbey (sic) appoint my Daughter Christine Louise Wiener Montijo as sole and universal heir to all my assets in Mexico."

The will named Christine as the executor of the Estate in Mexico. In September 2017, Donald, Gama, and Christine allegedly used the second POA to remove Steve as a surviving joint co-owner on the Mexico trusts and to transfer title in the properties held in the Mexico trusts to Donald alone. Donald died approximately six months later, in May 2018. Steve only learned of the will, and the alleged conspiracy, upon Donald's death.

In February 2019, Steve sued Gama, Christine, in her individual capacity and as executor of the Estate, and the Estate itself, in the Superior Court of San Diego County. He alleged Respondents engaged in an unlawful conspiracy to defraud him of his property interests in the Mexico trusts and, additionally, Donald and Gama breached their fiduciary duties owed to him. He asserted causes of action for breach of fiduciary duty, constructive fraud, fraud, intentional interference with contractual relationships, intentional interference with prospective economic advantage, and civil conspiracy. He also asserted a cause of action for declaratory relief, seeking a judicial

6

determination that Donald's will was "invalid" and, consequently, Donald died intestate and his Estate "shall be distributed according to the laws of intestate succession."

Not mentioned in the underlying complaint is the fact that, before filing the underlying California lawsuit, Steve filed a separate lawsuit in Mexico, challenging the validity of Donald's holographic will and the division of the Mexico properties in the Estate.

## II.

### *Motion to Quash Service of Summons*

Christine and Gama were served with the summons and complaint in Mexico, in accordance with the Hague Convention. Respondents specially appeared and moved to quash service of the summons for lack of personal jurisdiction or, in the alternative, forum non conveniens. Christine and Gama each submitted declarations in support of their motion to quash.

Christine is a citizen of Mexico and the United States. At all relevant times, she resided in and was domiciled in Chapala, State of Jalisco, Mexico, which is "more than 1,200 miles" from the United States/Mexico border. She does not work or own any business in the United States and has never established any residency or domicile in California. She visited Donald in Bonita "frequently" during the last years of his life, from 2016 to 2018, to care for her father at his request.

Gama is a citizen of Mexico and has, at all relevant times, resided in and was domiciled in Tijuana, Baja California, Mexico. He is licensed to practice law in Mexico, not California. He does not work or own any business or assets in the United States. He was Donald's "long time lawyer" and assisted Donald in his "Mexican business affairs." He also represents Christine in the Mexican probate action filed by Steve to set aside Donald's

7

will. Gama has never traveled to the United States to deliver any POA to Steve; in March 2017, he emailed POAs to Steve at the direction of his client Donald.

Respondents argued that all assets in dispute were in Mexico, Donald had maintained his domicile in Mexico, both Gama and Christine were domiciled in Mexico, and none of the Respondents had consented to jurisdiction in California. They asserted the fraudulent or misleading actions alleged in the complaint were not expressly aimed at California. Instead, the alleged actions were aimed at Mexico and any effects of those alleged actions occurred in Mexico. They further asserted that Steve had already filed an action in Mexico seeking to invalidate the holographic will, and that Mexico was the appropriate venue to address his claims.

Steve submitted his declaration in opposition to the motion to quash. He argued each of the Respondents had minimum contacts with California sufficient to support specific, or limited, personal jurisdiction. He alleged Gama sent him approximately eight emails between March and August 2017, and provided copies of the emails as attachments to his declaration. Steve alleged that in the emails, "Gama . . . explained that due to Donald's status as a legal 'immigrant' in Mexico, title of the trusts' real estate assets could be held in Donald's name." Steve further alleged that Gama was at the Bonita house when he dropped off at least one of the POAs, Gama had the POAs apostilled[4] in California, and Gama also asked him to sign papers that same day concerning a Mexican business in which he and Donald were partners.

_____

[4] An apostille is a "standard legal certificate attesting that the signatures, seals, or stamps are authentic on a public document used in a foreign country." (Black's Law Dict. (11th ed. 2019) p. 120, col. 2.)

Steve conceded Gama was not authorized to practice law in California, but asserted, through these actions, Gama engaged in an unauthorized practice of law in California.

As to Christine, Steve alleged she frequently visited Donald in California in the last few years of his life, and it was during these visits that she committed the tortious acts that gave rise to the underlying complaint. He averred in his declaration that Donald's personality changed dramatically in the last years of his life, and that those changes coincided with Christine spending a significant amount of time with Donald in the Bonita home. Steve "strongly believe[d]" Christine had " 'poisoned' " Donald against him. He asserted the Estate was "joined as the successor responsible entity to Donald's torts committed in California," and it would "be bound by the outcome of the case" insofar as Christine was also named in her capacity as the executor of the Estate.

In support of his opposition to the motion to quash, Steve submitted declarations from two other attorneys in Mexico, Miguel Alfredo Araiza Viloria and Jacob Salvador Lozano Collazo. Viloria explained the scope of the Mexico action and asserted that it differed from the California action, because the California action concerned the validity of the POAs executed in San Diego, while the Mexico action concerned the validity of Donald's will. He further averred that the California Secretary of State's office, which apostilled the second POA, is beyond the subpoena power of the Mexico court. Collazo provided information regarding the properties and businesses registered to Christine in Mexico.

The trial court allowed the parties to file supplemental briefing. In his supplemental opposition, Steve once again argued California had specific jurisdiction over Gama and Christine "as a co-conspirator." He separately

9

alleged, more generally, that California had "personal jurisdiction" over the Estate. (Capitalization omitted.) He argued the Estate "is the successor entity that must answer for its decedent tortfeasor's liabilities and obligations that existed, or contingently existed, as of the moment of Donald's death." He then asserted that all of Donald's conduct underlying the claims at issue occurred while Donald was residing in Bonita, except that the will was purportedly executed in Tijuana.

Respondents submitted a reply but did not directly address jurisdiction over the Estate or Christine as executor. Gama submitted a declaration in support of the reply, averring that he never represented Steve and was not counsel for "any trust related to any property at issue in the current litigation."

The trial court granted Respondents' motion to quash service of summons for lack of personal jurisdiction. The court found the evidence was insufficient to show a conspiracy—a factual finding Steve does not challenge on appeal—and that the remaining facts were insufficient to show Christine or Gama had voluntarily directed their activities towards California or purposefully availed themselves of the benefits of conducting activities within the state. The court found that Gama did not target Steve "for the specific purpose of inducing him to give up any property rights" he had in Mexico, that he did not intend to conduct any business or "in any other way gain directly or indirectly from dealings in this state." As to Christine, the court found "the only evidence presented is that she visited her father in San Diego and did so more frequently starting in 2016 . . . when he broke his hip." As to the Estate, the court found: "[A]ll of the estate assets are located in Mexico. The holographic will at issue relates to Mexican assets and disposition of those assets is under Mexican law. [Donald's] conduct relating to the alleged

10

fraud was expressly aimed at Mexico, not California, and all of the harm suffered as a result of the Estate or Donald Wiener's conduct concerns the Mexican real estate."

In addition, the trial court found the exercise of jurisdiction by California would be unreasonable, given that "[t]here is a burden of requiring [Respondents] to travel from Mexico to California, especially now that the border is essentially, if not completely, closed to travel," and "this case concerns Mexican property under Mexican law and there is no interest for California except that a California resident lost real estate in Mexico." Because it granted Respondents' motion to quash for lack of personal jurisdiction, the court found the issue of forum non conveniens moot. Steve timely appealed.

## DISCUSSION

Steve contends the trial court erred by granting the motion to quash. He maintains his previous assertions that California has *specific* jurisdiction over Gama, but has shifted positions on appeal with respect to Christine and the Estate. Conceding that the Estate is not an appropriate party (*Tanner v. Estate of Best* (1940) 40 Cal.App.2d 442, 445), Steve now contends California has *general* jurisdiction over Christine, as executor of the Estate, because it would have had jurisdiction over Donald while he was still alive. He also contends, in his reply brief, that California has jurisdiction over Christine as an individual, but does not specify whether that jurisdiction is general or specific.

Respondents assert the trial court correctly concluded that it did not have specific jurisdiction over Christine or Gama and that it is unreasonable for California to exercise jurisdiction over any of the named Respondents. They further argue this court is not required to consider new theories raised

11

for the first time on appeal.  Because jurisdiction is a fundamental matter of law, we exercise our discretion to consider Steve's contentions on the merits. In doing so, we conclude, as the trial court did, that California does not have personal jurisdiction over any of the Respondents and it would further be unreasonable for California to exercise jurisdiction over these foreign, non-resident defendants.

I.

*Relevant Legal Principles*

California's long-arm statute permits courts in California to exercise jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States."  (Code Civ. Proc., § 410.10; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).)  The exercise of personal jurisdiction by courts in California is thus limited primarily by the Due Process Clause of the United States Constitution.  (See *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court* (2021) 141 S.Ct. 1017, 1024 (*Ford Motor*) ["The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant."]; (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1779 (*Bristol-Myers*) ["It has long been established that the Fourteenth Amendment limits the personal jurisdiction of state courts."].)

"The Due Process Clause [of the United States Constitution] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'  [Citation.]  By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' [citation], the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their

primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 471–472 (*Burger King*).) "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " (*Walden v. Fiore* (2014) 571 U.S. 277, 283–284 (*Walden*); accord *Vons, supra,* 14 Cal.4th at p. 444.)

As the United States Supreme Court recently explained, there are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." (*Ford Motor, supra,* 141 S.Ct. at p. 1024.) "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State. [Citation.] General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant. [Citation.] Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction. [Citation.] In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile." (*Ibid.*)

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' [Citation.] The defendant, . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' [Citation.] The contacts must be the defendant's own choice

13

and not 'random, isolated, or fortuitous.' [Citation.] They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there. [Citation.] Yet even then—because the Defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum. [Citations.] Or put just a bit differently, 'there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." ' " (*Ford Motor*, *supra*, 141 S.Ct. at pp. 1024–1025.)

"Finally, in analyzing the exercise of specific jurisdiction, '[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, [those] contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." ' [Citations.] Courts may evaluate the burden on the defendant of appearing in the forum, the forum state's interest in adjudicating the claim, the plaintiff's interest in convenient and effective relief within the forum, judicial economy, and 'the "shared interest of the several states in furthering fundamental substantive social policies." ' " (*Vons*, *supra*, 14 Cal.4th at pp. 447–448, citing *Burger King*, *supra*, 471 U.S. at pp. 476–477.) Thus, "even if the defendant has purposefully engaged in forum activities," the "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction." (*Burger King*, at pp. 477–478; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).)

14

On a motion to quash the service of summons on jurisdictional grounds, the plaintiff has the initial burden to prove, by a preponderance of evidence, that the defendant had adequate minimum contacts with the forum. (*Vons, supra,* 14 Cal.4th at p. 449; *Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at p. 110.) If the plaintiff does so, the burden shifts to the defendant to demonstrate the exercise of jurisdiction would be unreasonable. (*Vons,* at p. 449; *Automobile Antitrust Cases*, at pp. 110–111.) On appeal, "[w]hen there is conflicting evidence, the trial court's factual determinations are not disturbed . . . if supported by substantial evidence." (*Vons,* at p. 449.) However, "[w]hen no conflict in the evidence exists, . . . the question of jurisdiction is purely one of law" and our review is de novo. (*Ibid.*; *Automobile Antitrust Cases*, at p. 111.)

II.

*California Does Not Have Specific Jurisdiction over Gama*

We first address Steve's contention that California has specific jurisdiction over Gama. "The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation." ' " (*Walden*, *supra,* 571 U.S. at pp. 283–284; accord *Bristol-Myers, supra,* 137 S.Ct. at p. 1782.) Courts employ a three-part test to determine whether a defendant has had sufficient minimum contacts with the forum state to be subject to specific jurisdiction. A court may exercise specific jurisdiction over a nonresident defendant *only if*: (1) the defendant has purposefully availed himself of forum benefits or purposefully directed his activities at the forum state; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the assertion of personal jurisdiction would comport with the principles of fair play and substantial justice. (*Pavlovich, supra,* 29 Cal.4th

15

at p. 269; *Vons, supra,* 14 Cal.4th at pp. 446–447; *Picot v. Weston* (9th Cir. 2015) 780 F.3d 1206, 1211 (*Picot*) [applying California law to determine whether California could exercise specific jurisdiction over a nonresident defendant].)

As to the first prong, "[t]he exact form of our jurisdictional inquiry depends on the nature of the claim at issue." (*Picot*, *supra*, 780 F.3d at p. 1212.) For claims sounding in contract, courts generally apply a " 'purposeful availment' " analysis, where the focus is on the " 'defendant's intentionality.' " (*Pavlovich*, *supra*, 29 Cal.4th at p. 269; *Picot*, at p. 1212.) " 'This [inquiry] is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich*, at p. 269.) For claims sounding in tort, courts generally apply a " 'purposeful direction' test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." (*Picot*, at p. 1212; accord *Pavlovich*, at p. 270.) This test, also known as the "*Calder* effects test" derived from *Calder v. Jones* (1984) 465 U.S. 783, "requires intentional conduct *expressly aimed at or targeting* the forum state in addition to the defendant's knowledge that his intentional conduct would cause harm in the forum." (*Pavlovich*, at p. 271.)

Steve first contends there is specific jurisdiction over Gama because Gama was "Donald's agent in performing acts that accomplished Donald's fraudulent transfer of Steve's interest in the Mexican properties to himself." But on appeal, Steve does not challenge the trial court's finding that "the evidence was insufficient to show a conspiracy." Despite this concession, he continues to rely heavily on the alleged conspiracy, perhaps because it is

16

essentially the gravamen of the underlying complaint.  He begins his discussion of specific jurisdiction over Gama by asserting:  "Donald was the ultimate malefactor, lying to Steve about his intention to put the Mexican property in joint ownership and directing Gama to obtain the necessary power of attorney from Steve. . . . [¶]  Acting as Donald's attorney, Gama repeated—and, thus ratified—Donald's lies."

Although Steve does not need to establish the merits of his claim to prove jurisdiction, it is still his burden to demonstrate jurisdictional facts as to "each separate nonresident defendant, even in a case alleging a conspiracy." (*Automobile Antitrust Cases*, *supra,* 135 Cal.App.4th at p. 110.) "Allegations of conspiracy do not establish as a matter of law that if one conspirator comes within the personal jurisdiction of our courts, then California may exercise jurisdiction over other nonresident defendants who are alleged to be part of that same conspiracy.  Personal jurisdiction must be based on forum-related acts that were *personally committed by each nonresident defendant*.  The purposes and acts of one party—even an alleged coconspirator—cannot be imputed to a third party to establish jurisdiction over the third party defendant." (*Id*. at p. 113, italics added.)  Because he concedes the evidence was insufficient to show a conspiracy, Steve cannot rely on any such alleged conspiracy to establish a jurisdictional fact.  Still, he cannot simply impute alleged malfeasance by Donald to Gama in order to establish jurisdiction over Gama.

Second, Steve contends Gama purposefully directed his activities "at Steve, a California resident," by sending emails and having phone conversations with Steve directing him to execute the POAs and by preparing and sending the POAs to Steve.  This conduct is insufficient to establish personal jurisdiction over Gama because, as he acknowledges, the alleged

17

conduct was not directed at California the forum, but "at Steve, a California resident." (See *Picot, supra,* 780 F.3d at p. 1214 [In determining whether a defendant purposefully directed his activities at the forum state, "we must 'look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.' "].)

As the United States Supreme Court has explained, "the relationship [among the defendant, the forum, and the litigation] must arise out of contacts that the 'defendant *himself*' creates with the forum State." (*Walden, supra,* 571 U.S. at p. 284.) Similarly, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." (*Id.* at p. 285.) Thus, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." (*Ibid.*) "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, *not based on the 'random, fortuitous, or attenuated' contacts* he makes by interacting with other persons affiliated with the State." (*Id.* at p. 286, italics added.)

Here, Steve presents no evidence suggesting Gama *himself* intentionally created any contacts *with California*. It is undisputed that Gama is a citizen of Mexico and is domiciled in Mexico. He does not work or own any business or assets in the United States. He is not licensed to practice law in California. He did not purposefully seek out business in

California.[5]  (See *Hanson v. Denckla* (1958) 357 U.S. 235, 251–253 [finding insufficient minimum contacts to establish jurisdiction where "[t]he defendant trust company has no office in Florida, and transacts no business there," beyond remitting trust income to settlor residing there].)  Rather, as set forth in the complaint, Gama began representing Donald in a divorce proceeding in Mexico, where Gama does practice law, while Donald was living in Mexico.  Donald then continued to engage Gama on matters arising under Mexican law, including the Mexico trusts.  The fact that Gama eventually spoke with Donald about his affairs in Mexico while he was housebound in California does not establish sufficient minimum contacts with California.  (See *Walden, supra,* 571 U.S. at p. 285.)

Gama's contacts with Steve are equally insufficient to establish personal jurisdiction over Gama.  Again, our "analysis looks to the defendant's contacts with the forum State itself, *not the defendant's contacts with persons who reside there.*"  (*Walden, supra*, 571 U.S. at p. 285, italics added.)  The only reason that Gama contacted Steve was because of Steve's involvement in the Mexico trusts.  Accordingly, those contacts were not directed at California, and were instead the kind of " 'random, fortuitous, or attenuated' contacts [made] by interacting with other persons affiliated with

---

5    Steve alleges he believed Gama was also his attorney but whether Gama was his attorney was a disputed fact, and he offers no evidence, such as a retainer agreement or payment of attorney fees to Gama, beyond his own self-serving statements to support that assertion.  (See *Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at p. 110 ["Declarations cannot be mere vague assertions of ultimate facts, but must offer specific evidentiary facts permitting a court to form an independent conclusion on the issue of jurisdiction."].)

19

the State," which have been expressly declared an insufficient basis to assert personal jurisdiction. (See *id.* at p. 286.)

Steve asserts, to the contrary, that Gama "actively targeted" him in California with the express intent of furthering Donald's fraud, but the evidence does not support that contention. First, as we have already explained, Steve cannot rely on the alleged conspiracy with Donald because he concedes there was insufficient evidence of a conspiracy. Further, it is undisputed that Steve voluntarily entered into real estate transactions with his father in Mexico and that the Mexican real estate was held in Mexican trusts established under Mexican law. Notably, Steve does not contend that Gama induced him to enter into the real estate transactions in the first instance, nor would the evidence support such a contention. Instead, the emails upon which Steve relies were sent years later, in 2017, and, on their face, address only Donald's request to make changes to the previously established Mexico trusts. Thus, at most, the evidence establishes that Gama contacted Steve because of the relationship that Steve had previously established with Donald in Mexico.

Steve's assertion that Gama made direct misrepresentations to him in emails, or on the phone, is equally unsupported. The trial court found "there is no evidence to suggest Mr. Gama targeted [Steve] for the specific purpose of inducing him to give up any property rights he had in property located in Mexico." Steve cites to his own self-serving declaration, in which he averred that he relied on Gama's alleged misrepresentations, but he does not directly address the trial court's finding or contend the finding was not supported by substantial evidence. Accordingly, we accept the trial court's unchallenged determination. (See *Vons, supra,* 14 Cal.4th at p. 449; *Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016*)* 5 Cal.App.5th 215, 222.) Moreover,

20

the emails that Steve himself included in that same declaration demonstrate that Gama told Steve the purpose of the POAs was to allow Donald to dissolve the trusts and take direct title to the land *in his own name*.[6] Thus, substantial evidence supports the trial court's conclusion that Gama did not purposefully target Steve with the intent to defraud him.

*Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221 (*Edmunds*) is instructive. There, the court concluded California did not have specific jurisdiction over an attorney who represented a California resident concerning a real estate transaction in Hawaii, despite the fact that the attorney traveled to California to defend a deposition in connection with the Hawaiian litigation. (*Id.* at pp. 224, 226, 232.) Further, as here, the plaintiff in *Edmunds* made allegations of a conspiracy, but the court noted the purposes of the other parties could not be imputed to the attorney and that its inquiry should instead focus on whether the attorney intended to conduct business in California. (*Id.* at p. 233.) The court concluded the attorney did not intend to conduct business in California, primarily because "[the attorney] clearly showed that his understanding of his role was that his actions were confined to litigation activities in the Hawaii . . . case." (*Ibid.*) Here, Gama's role was similarly limited to representing his Mexican client with respect to real estate held in Mexican trusts under Mexican law.

Even if we were to accept Steve's contention that Gama targeted him with the intent to defraud, which we do not, it remains that any alleged fraud

---

[6]     We also note the allegation that Steve relied on Gama's alleged misrepresentation regarding his inability to hold title to the land in Mexico is inconsistent with the allegation in the underlying complaint that he relied on Donald's representation that they would hold title to the Mexican real estate *jointly* in both of their names.

concerned real estate held by his Mexican client in Mexico, not California. In *Picot*, the plaintiffs, both residents of California, asserted specific jurisdiction over Weston, a resident of Michigan, based on a business relationship they had entered into to develop a certain technology. (*Picot, supra,* 780 F.3d at p. 1210.) Plaintiffs alleged Weston tortiously interfered with their contract to sell the technology to a third-party buyer by threatening to sue them and, by doing so, he directed his activities at them, in California. (*Id.* at pp. 1210, 1213.) Applying *Walden*, the court concluded California could not assert jurisdiction over Weston based on the threats because the alleged conduct was targeted, at most, at them as plaintiffs. (*Id.* at p. 1214.) In addition, the court found the effects of Weston's actions also were not tethered to California simply because the plaintiffs were in California and, instead, the economic injury would follow them wherever they chose to live. (*Id.* at p. 1215.) The same is true here. Any effect of Gama's alleged conduct is not tethered to California simply because Steve is present in California, and would instead, follow him wherever he may go. (See also *Walden*, *supra*, 571 U.S. at p. 290 ["Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."].)

Third, Steve contends Gama purposefully availed himself of the benefits and protections under California law by having the POAs notarized and apostilled in California. We are not persuaded. Again, it was Steve that voluntarily entered into a real estate transaction in Mexico, and the only reason that the POAs needed to be notarized or apostilled in the first instance was because Steve executed them while physically present in

22

California.  As Gama's email explained, the very purpose of the apostille was to establish the authenticity of the POA for use in Mexico.  Steve presents no evidence that Gama himself benefited in any way from the process or the resulting documents.[7]

Edmunds is again instructive here.  The Edmunds court found the "mere facts" that the attorney came to California to defend a deposition—which likely involved, for example, a court reporter that certified a transcript under California law—and "made phone calls and wrote letters to and from this state, and accepted payment from a California client, [did] not establish purposeful availment of the benefits and protections of California law." (Edmunds, supra, 24 Cal.App.4th at p. 234.)  Here, the mere fact that Gama facilitated the execution of documents in California necessary for his Mexico client to complete a transaction in Mexico is no more helpful in establishing that Gama purposefully availed himself of the privileges of conducting business in California.  Nor does it establish, as Steve asserted in the trial court, that Gama engaged in the unauthorized practice of law in California.

In sum, we conclude Steve has failed at the first step of his burden to demonstrate that Gama either purposefully directed his activities at California, or purposefully availed himself of the privilege of conducting activities in California.  We, therefore, need not and do not address the second step of whether the suit arises out of Gama's alleged forum-related activities.

---

[7]     Steve asserts that Gama himself took the document to the Secretary of State to be apostilled but Gama stated, in verified discovery responses, that he instead hired a third-party to do so.

## III.

*California Does Not Have Personal Jurisdiction over Christine, Either in Her*
*Individual Capacity or As Executor of the Estate*

A.  *Christine in Her Individual Capacity*

As a preliminary matter, Steve did not assert California has personal jurisdiction over Christine in her individual capacity in his opening brief on appeal.  He now asserts, for the first time in his reply brief, that Christine in her individual capacity is "subject to personal jurisdiction" in California, because she "[h]ad [e]xtensive [c]ontacts with and [p]resence in California [r]elated to [t]his [a]ction."  He cites to no authority for his assertions, and the lack of clarity in his briefing makes it impossible to discern whether he is asserting there is general or specific jurisdiction over Christine as an individual.  We generally do not consider arguments raised for the first time in the reply brief (see *American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275–276 ["Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief[.]"]), nor are we required to develop the appellant's arguments for him.  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.  (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007  (*Berger*); *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)  However, to the extent Steve now asserts California has specific jurisdiction over Christine in her individual capacity, we will address that issue since the parties addressed it in the trial court.

Again, although he concedes the evidence was insufficient to show a conspiracy, Steve continues to rely on the allegation of a conspiracy as a jurisdictional fact.  He asserts California has specific jurisdiction over

24

Christine because "she resided with Donald at his Bonita home for 'extended' periods" during "her visits" with her father, during these visits, "she conspired with [Donald] to misappropriate Steve's interest in the Mexico propert[ies] so that Donald could bequeath the property to her in full," and "most importantly," she took Donald from California to Tijuana to execute the allegedly fraudulent will. As we have said, Steve cannot establish jurisdiction on the alleged conspiracy he concedes was not supported by the evidence. Steve has simply failed to demonstrate how Christine purposefully directed any activity at California or purposefully availed herself of any benefits or protections of California.

It is not disputed, however, that Christine is a citizen of Mexico and domiciled there. She does not work or own any business in the United States and has never established any residency or domicile in California. She visited Donald in Bonita "frequently" during the last years of his life, from 2016 to 2018, to care for her father at his request. "While 'physical entry into the State . . . is certainly a relevant contact,' [citation], a defendant's transitory presence will support jurisdiction only if it was meaningful enough to 'create a "substantial connection" with the forum state.' " (*Picot*, *supra*, 780 F.3d at p. 1213.) We conclude Christine's extended visits with her father while he was housebound in Bonita did not create any such substantial connection with California.

B.    *Christine as Executor of the Estate*

Shifting positions on appeal, Steve now asserts that California has *general* jurisdiction over Christine as executor of the Estate based on claims that arose against Donald during his lifetime. He concedes "[t]his argument was not made explicitly in the trial court," and explains, "[a]lthough [R]espondents did not raise the point in the trial court, [Steve] now

25

recognizes that the [E]state cannot be a party." He now asserts that California would have had jurisdiction over Donald during his lifetime and Christine, in her capacity as executor of the Estate, "is a proper defendant in an action on a claim against the [E]state."

Respondents argue that we should not consider the issue given Steve's concession that he has raised it for the first time on appeal. (See *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal.' "].) Respondents acknowledge that jurisdiction is a question of law and that this court does have discretion to address a question of law on undisputed facts that is raised for the first time on appeal. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767; *In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 511 [appellate court has discretion to consider merits of new arguments].) They contend, however, that Steve's argument is not based purely on undisputed facts and ask us to decline to exercise our discretion to reach it.

Although Steve did not raise this exact argument in the trial court, he did assert, in his supplemental opposition to the motion to quash, that the Estate "is the successor entity that must answer for its decedent tortfeasor's liabilities and obligations that existed, or contingently existed, as of the moment of Donald's death," and that the vast majority of conduct alleged in the underlying complaint with respect to Donald occurred while Donald was residing in California. There is also no dispute the complaint was filed against Christine, individually *and* in her capacity as executor to the Estate. Neither Respondents nor the trial court questioned whether the Estate, or Christine as executor, was the appropriate party with respect to claims arising from Donald's conduct while he was still alive. Although neither

26

Respondents nor the trial court were obligated to refine Steve's arguments for him, Steve's arguments in his supplemental opposition were at least sufficient to put Respondents on notice of the basic nature of the issue. We will therefore exercise our discretion to reach the merits.

Turning to the merits, Steve asserts California has general jurisdiction over Christine as the executor of the Estate because California would have had general jurisdiction over Donald but for his death. Because Steve did not raise this argument in the trial court, neither the parties nor the court directly addressed whether California would have had personal jurisdiction over Donald. Steve now contends, without significant discussion or authority, that California would have had general jurisdiction over Donald for three reasons: 1) Donald had lived in Bonita for 16 years and was domiciled in California; 2) Donald entered into a business relationship with Steve, a California resident; and 3) Donald committed the acts that give rise to the litigation while housebound in Bonita.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (*Goodyear Dunlop Tires Operations, S. A. v. Brown* (2011) 564 U.S. 915, 924 (*Goodyear*).) Although domicile and residence are sometimes used interchangeably, they are not the same. (See *Whittell v. Franchise Tax Bd.* (1964) 231 Cal.App.2d 278, 284.) Interpreting the meaning of the term " 'residence' " as used in certain income tax statutes, the court in *Whittell* explained, " 'domicile' properly denotes the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning but which the law may also assign to him constructively. Residence, on the other hand, denotes any factual place of abode of some permanency, that is, more than a

27

mere temporary sojourn [citation]. While a person can have in law only one domicile [citation], he may have several 'residences' for different purposes[.]" (*Ibid.*; accord *In re Marriage of Tucker* (1991) 226 Cal.App.3d 1249, 1258 ["While a person may, at any given time, have more than one residence, he or she may have only one domicile at a time."]; *Briggs v. Superior Court* (1947) 81 Cal.App.2d 240, 252 [distinguishing between domicile and residency in the context of jurisdiction].)

Here, the evidence is not sufficient to establish Donald was domiciled in California. At most, there is evidence that Donald spent an increasing amount of time in the Bonita home as his health declined in the later years of his life. However, there is also evidence to support Respondents' contention that Donald continued to maintain both his legal residence and his domicile in Mexico. The complaint alleges Donald moved his " 'official' residence" to Tijuana in the 1970s and Donald's will, executed in April 2017, states that he is a legal resident of Mexico with his domicile in Tijuana. To the extent the record is silent, or otherwise insufficient, to establish any necessary jurisdictional fact, any such deficiency will be resolved in favor of the order and against a finding of jurisdiction. (See *Vons, supra,* 14 Cal.4th at p. 449 [appellant has the burden to demonstrate facts sufficient to establish jurisdiction in the trial court, and he also has the burden of proving error on appeal]; *Wolfe, supra,* 217 Cal.App.3d at p. 546 [any conflicts in the evidence must be resolved against appellant and in support of the trial court's order granting the motion to quash].) Resolving this conflict against Steve and in favor of the trial court's order, as we must (*Wolfe,* at p. 546), we conclude Steve has not established that California would have had general jurisdiction over Donald during his lifetime, based on domicile.

Absent domicile, Steve provides no substantive analysis or authority to support his assertion that California had *general* jurisdiction over Donald. The additional allegations he relies on—that Donald entered into a business relationship with him, a California resident, and committed the acts giving rise to the litigation while physically present in Bonita—are not the type of wide-ranging, continuous, and systematic affiliations with the state necessary to support a finding of general jurisdiction in the absence of domicile. (See *Goodyear, supra,* 564 U.S. at p. 919 [a court may assert general jurisdiction where the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State"]; accord *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 366 [defendant's business contacts in California "were not so continuous and systematic as to render him 'essentially at home' in California"].) These allegations, which relate specifically to the underlying litigation, are, instead, relevant to "case-linked" or *specific* jurisdiction. (See *Ford Motor*, *supra*, 141 S.Ct. at p. 1024.) But Steve does not directly assert that California had specific jurisdiction over Donald, and, again, we are not required to develop his arguments for him and may treat the contention as waived. (See *Berger, supra,* 128 Cal.App.4th at p. 1007.) Even if we did consider the argument, it would fail for the same reasons already discussed with respect to Gama. Donald's conduct was directed, at most, at Steve, and not California as a forum, and the effects are not tethered to California simply because Steve is present in California.

Steve relies on *Mitsui Manufacturers Bank v. Tucker* (1984) 152 Cal.App.3d 428 (*Mitsui*) to assert there is jurisdiction over Christine as executor of the Estate. Although the *Mitsui* court found California had jurisdiction over the executor of her deceased husband's estate who had

moved from California to Arizona, the case is inapposite. (*Id.* at p. 430.) The deceased husband, Oral Tucker, lived in San Diego, operated a business in San Diego, and took out a business loan from a bank in San Diego approximately two months before his death. (*Ibid.*) Shortly after Tucker's death, his wife and the executor of his estate moved to Arizona. (*Ibid.*) After an unsuccessful attempt at filing a creditor's claim for the balance of the loan in Arizona, the bank sued the wife in her representative capacity in California. (*Ibid.*) The wife specially appeared to dispute personal jurisdiction and the trial court granted her motion to quash service of summons. (*Ibid.*)

The appellate court reversed the trial court's order, concluding that California had jurisdiction over the wife as administrator of the estate. (*Mitsui, supra,* 152 Cal.App.3d at p. 432.) The court explained, "the modern rule is: 'An action may be maintained against a foreign executor or administrator upon a claim against the decedent when the local law of the forum authorizes suit in the state against the executor or administrator and (a) suit could have been maintained within the state against the decedent during his lifetime because of the existence of a basis of jurisdiction other than mere physical presence.' (Rest.2d Conf. of Laws, § 358.)" (*Id.* at p. 430.) The court then concluded that " 'suit could have been maintained' against [Tucker], because he had ample minimum contacts with California: *He entered into a California contract, resided there, and ran a California business.*" (*Ibid.*, italics added.)

The present case is easily distinguishable from *Mitsui* since Steve has not shown, in the first instance, that California would have had personal jurisdiction over Donald during his lifetime. Further, unlike *Mitsui*, the underlying controversy does not concern a business or a business transaction

30

in California.  Instead, Steve's lawsuit concerns *a partnership created with a person who at the time was a Mexico resident domiciled in Mexico, to purchase property in Mexico, which was to be held in trusts under Mexican law*.[8]

IV.

*It Would Not Be Reasonable for California to Exercise Jurisdiction over Respondents*

In sum, we conclude Steve has failed in his burden of demonstrating that any respondent had adequate minimum contacts with California to justify the exercise of personal jurisdiction over any of them.  Our inquiry could stop here.  However, even if we were to assume Respondents had sufficient minimum contacts with California, we would conclude, as the trial court did, that the exercise of jurisdiction over them would not comport with fair play and substantial justice.  (See *Burger King*, *supra*, 471 U.S. at pp. 477–478 [the "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction" even where there is sufficient minimum contacts with the forum].)

In determining whether the assertion of personal jurisdiction comports with " ' fair play and substantial justice,' " courts must also consider " 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,'

---

[8]    Steve asserts Respondents concede the allegations that Donald made fraudulent misrepresentations to Steve in California "meet the criteria of a basis *other than* mere physical presence" under *Mitsui.*  We disagree with Steve's reading of Respondents' statements, but we are not bound by any purported concession in any event.  Whether California would have had personal jurisdiction over Donald is a matter of law that we review de novo.  (See *Tun v. Wells Fargo Dealer Services, Inc.* (2016) 5 Cal.App.5th 309, 327 ["we are not bound to follow the meaning of a statute (or the law) conceded by a party"].)

'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' " (*Burger King, supra,* 471 U.S. at pp. 476–477.)

Here, the trial court considered Respondents' arguments with respect to each of the relevant factors. It then stated: "There is a burden of requiring defendants to travel from Mexico to California, especially now that the border is essentially, if not completely, closed to travel [an apparent reference to the effects of the ongoing COVID-19 pandemic]. Moreover, this case concerns Mexican property under Mexican law and there is no interest for California except that a California resident lost real estate in Mexico." Focusing on just one line from the court's ruling, Steve asserts it would not be so burdensome for Christine or Gama to cross the border because both have done so in the past. He further asserts they may not even be required to do so because California courts "are currently hearing cases remotely" due to the ongoing COVID-19 pandemic. We are not persuaded.

First, the mere fact that Respondents have crossed the border in the past does not mean it was not burdensome for them to do so then, or not burdensome for them to do so now. We note that Christine lives in Chapala, Jalisco, which is "more than 1,200 miles" from the United States/Mexico border. Second, there is no guarantee the trial court would allow Respondents to appear remotely throughout the case, or that Respondents would choose to do so.

More importantly, though, the burden of appearing in court in San Diego is but one factor that we must consider. Steve does not dispute the trial court's findings with respect to the remaining factors. At most, Steve argues California has an interest in protecting its residents from fraud.

32

While that is generally a true statement, he fails to acknowledge the alleged fraud in this case arises from an agreement he voluntarily entered into with a person living in and domiciled in Mexico to buy and hold land in Mexico under Mexican law. This is not a situation in which a non-resident defendant "deliberately 'reached out beyond' " his home to seek out a California resident to entice him to enter into a business deal under fraudulent circumstances. (*Ford Motor*, *supra*, 141 S.Ct. at pp. 1024–1025; compare *Moncrief v. Clark* (2015) 238 Cal.App.4th 1000, 1007 [finding California had personal jurisdiction over an Arizona attorney who targeted a California attorney "with the specific purpose of inducing [the other attorney's] client to finalize the purchase of farm equipment"].) Rather, as the record demonstrates, Steve reached out to a person living in Mexico and voluntarily entered into a real estate transaction in Mexico governed by Mexican law.

Further, Steve acknowledges he has filed a separate action in Mexico seeking to invalidate the will. Mexico has a far greater interest in resolving questions of title to real property located in its territory and the efficacy of a will executed under Mexican law. "The law of specific jurisdiction . . . seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1025.) The constitutional considerations of fair play and substantial justice require courts to use restraint when determining jurisdictional questions, and "[w]e are even more cautious in our application of the law of personal jurisdiction when the nonresident defendant is from another nation rather than another state." (*Automobile Antitrust Cases*, *supra*, 135 Cal.App.4th at p. 109.) "When the defendant is from a foreign nation, a high barrier of sovereignty tends to undermine the reasonableness of exercising personal jurisdiction in this state." (*Ibid.*)

Moreover, a second action in California would not be an efficient use of judicial resources and could result in conflicting rulings. Steve argues the two lawsuits are different because the Mexican action involves the validity of the will while the present action involves the validity of the POAs executed in California, and the complaint here asserts causes of action not available in Mexico. He does not identify which causes of action are not available in Mexico, nor does he provide any authority to support that assertion.[9] Nor does he explain why he cannot simply allege that the POAs are invalid in the lawsuit that is already pending in Mexico. Finally, we disagree with the characterization that the California lawsuit involves primarily the validity of the POAs. In his cause of action for declaratory relief, Steve seeks a judicial determination that Donald's will was "invalid" and, consequently, the Estate "shall be distributed according to the laws of intestate succession."

For all of these reasons, we conclude the exercise of personal jurisdiction in California over the foreign, non-resident Respondents would be unreasonable and not comport with fair play and substantial justice.

---

[9] In his declaration, attorney Viloria states, "[t]he Law of Baja California does not provide specific remedies for or even recognize" causes of action for Intentional Interference with Contractual Relationship or Intentional Interference with Prospective Economic Advantage, but he also does not provide any authority to support the assertion. Moreover, the only alleged agreement is the "partnership" created to acquire and hold ownership in Mexican real estate and Steve presents no evidence or authority indicating any such partnership agreement would be governed by California, and not Mexican law.

34

## DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

DO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.